UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC KNIGHT,

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC

    Defendants.

_____/

Case No. 17-cv-11491

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [16], GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT [22], AND DENYING DEFENDANT'S MOTION TO STAY [9]

## I.    Introduction

Plaintiff Eric Knight filed an initial Complaint on May 10, 2017,[1] which he

amended on July 15, 2017.  Dkt. Nos. 1, 16.  In his Complaint, Knight asserts claims

against the Defendant, Ocwen Loan Servicing, LLC, under the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227; the common law negligence doctrine of

Michigan law; and the Michigan Occupational Code, Michigan Compiled Laws §

339.900.  The Defendant filed a Motion to Dismiss the Complaint on July 31, 2017.

---

[1] "A civil action is commenced by filing a complaint with the court."  FED. R. CIV.
P. 3.  Plaintiff's counsel signed the initial Complaint on May 9, 2017.  Dkt. No. 1,
p. 19 (Pg. ID 19).  Because the Complaint was not filed with the Court until May 10,
2017, May 10 marks the commencement of the action, not May 9, 2017 as contended
by the Defendant.  *See* Dkt. No. 16, p. 10 & n.2 (Pg. ID 153).

Dkt. No. 16. In his response to Ocwen's Motion to Dismiss, Knight requested leave to amend the Complaint to add claims under the Michigan Collection Practices Act. Dkt. No. 22, p. 29–30 (Pg. ID 215–16).

On June 30, 2017, Ocwen filed a Motion to Stay the Complaint pending a ruling in *ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir.). Dkt. No. 9.

Presently before the Court is the Defendant's Motion to Dismiss [16], the Plaintiff's Request for Leave to Amend the Complaint [22], and the Defendant's Motion to Stay the Complaint [9]. For the reasons that follow, the Court will DENY IN PART and GRANT IN PART Defendant's Motion to Dismiss [16], GRANT Plaintiff's Request for Leave to Amend the Complaint [22], and DENY Defendant's Motion to Stay [9].

## II.    Background

Eric Knight owes a mortgage-related debt to the Defendant, a licensed mortgage loan servicer. *See* Dkt. No. 12, p. 2 (Pg. ID 88); Dkt. No. 16, p. 11 (Pg. ID 154); Dkt. No. 16-1, p. 2 (Pg. ID 170). At one point prior to 2013, Knight granted Ocwen permission to call him on his cell phone regarding the collection of this debt. Dkt. No. 12, p. 5 (Pg. ID 91). Ocwen proceeded to call Knight on his cell phone "at least 1,255" times between November 13, 2011 and December 16, 2015. *Id.* at p. 5–6 (Pg. ID 91–92).

Knight asserts that Ocwen violated the TCPA by calling his cell phone with equipment that could store or produce numbers to be called, using a random or sequential number generator. *Id.* at p. 5 (Pg. ID 91). Knight believes the Defendant used such equipment because when Ocwen called him there would frequently be silence, followed by a click or beep-tone, and then the voice of a live Ocwen representative. *Id.* at p. 6 (Pg. ID 92). On occasions when the Defendant called him, a voice-recorded message would play. *Id.*

These calls frustrated and distressed Knight, and also drained his cell phone battery. *Id.* at p. 7–8 (Pg. ID 93–94). Knight often refrained from answering his phone, afraid that he was receiving a call from the Defendant. *Id.* His reluctance to answer the phone negatively impacted his relationships with family members and caused him to miss many important communications. *Id.*

Because of his frustration with Defendant's phone calls, on calls with the Defendant as late as 2013, Knight "stat[ed] that [he] no longer wished to be contacted by telephone." *Id.* at p. 6 (Pg. ID 92). The calls did not stop, however. *Id.* at p. 7 (Pg. ID 93).

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to make an assessment as to whether a plaintiff has stated a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[E]ven though the complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *Twombly*, 550 U.S. at 570. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 553–54). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations and quotations omitted). Instead, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal citations and quotations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id.* (internal citations and quotations omitted).

## IV. Discussion

Plaintiff alleges claims based on violations of the TCPA, violations of negligence under Michigan law, and violations of the Michigan Occupational Code. Defendant asserts that the Plaintiff has failed to adequately allege each of these claims. The Court finds that some of Plaintiff's claims based on violations of the TCPA are barred by the statute of limitations, although others survive the motion to dismiss. The Court also concludes that the Plaintiff has failed to adequately allege claims based on negligence and the Michigan Occupational Code.

Plaintiff requests leave to amend his claims related to the Michigan Occupational Code by adding claims regarding the Michigan Collection Practices Act. The Court will grant Plaintiff leave to amend.

Finally, the Defendant requests that the Court stay this matter pending a ruling in *ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir.). The Court will deny this request.

A.      Count I:  Relief under the TCPA, 47 U.S.C. § 227

The Defendant argues that the Plaintiff fails to adequately allege a violation

of the TCPA because many of his claims are barred by the statute of limitations, and

he has not properly pled revocation of consent.  Dkt. No. 16, p. 11–12 (Pg. ID 154–

55).  Knight responds that he has plausibly alleged a violation of the TCPA because

his claims were tolled by another action and he has adequately alleged the revocation

of consent.  Dkt. No. 12, p. 3 (Pg. ID 89).  The Court finds that Plaintiff's TCPA

claims arising before May 10, 2013 are barred by the statute of limitations.  For any

TCPA claims not barred by the statute of limitations, the Court concludes that the

Plaintiff has adequately alleged revocation of consent.

Knight asserts that Ocwen violated the TCPA by calling his cell phone

repeatedly regarding debt collection between November 13, 2011 and December 16,

2015, and that Ocwen did so through an automatic dialing system.  Dkt. No. 12, p.

5 (Pg. ID 91).  The TCPA provides that:

> It shall be unlawful for any person within the United States, or any
> person outside the United States if the recipient is within the United
> States—
>> (A) to make any call (other than a call made for emergency
>> purposes or made with the prior express consent of the called
>> party) using any automatic telephone dialing system or an
>> artificial or prerecorded voice—
>>> . . .
>>> (iii) to any telephone number assigned to a paging service,
>>> cellular telephone service, specialized mobile radio
>>> service, or other radio common carrier service, or any
>>> service for which the called party is charged for the call,

> unless such call is made solely to collect a debt owed to or guaranteed by the United States;
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B). This section defines "automatic telephone dialing system" as equipment which can "store or produce telephone numbers to be called, using a random or sequential number generator," and "dial such numbers." *Id.* at § 227(a)(1).

Knight has plausibly alleged that Ocwen used an "automatic telephone dialing system" and artificial or prerecorded voice when calling him. *See* Dkt. No. 12, p. 5 (Pg. ID 91).

### 1.    Statute of Limitations

The parties agree that Knight's claim under the TCPA is subject to a four-year statute of limitations. *See* 28 U.S.C. § 1658(a); *see also Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 682 (6th Cir. 2013) ("In a case involving a federal cause of action that arises under an Act of Congress that was enacted after December 1, 1990, the cause of action is 'governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period.' (quoting

*McCormick v. Miami Univ.,* 693 F.3d 654, 662 (6th Cir. 2012))).[2]  The parties

dispute, however, whether his TCPA claims were tolled because of another matter.

*See* Complaint, *Snyder v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-8461, 2015 WL

1910989 (N.D. Ill. Apr. 27, 2015), Dkt. No. 1.

As background, in *Snyder*, the plaintiffs filed a complaint on October 27,

2014, alleging that Ocwen called them regarding debt collection with an autodialer

in contravention of the TCPA and the Federal Debt Practices Act.  *Id.*  The *Snyder*

court decided a motion for class certification on June 28, 2017.  *Snyder*, --- F. Supp.

3d ----, 2017 WL 2798387, at *1 (N.D. Ill. June 28, 2017).[3]

Knight argues that the commencement of *Snyder* requires tolling of the statute

of limitations for his TCPA claims.  Dkt. No. 12, p. 3 (Pg. ID 89).  In response,

Ocwen alleges that Plaintiff's TCPA claims are not subject to tolling because Knight

filed the initial Complaint in this action before a ruling on class certification in

*Snyder*.  Dkt. No. 16, p. 12 (Pg. ID 155).  The Court finds that the Plaintiff's TCPA

claims were not tolled by *Snyder* because Knight forfeited tolling by filing the instant

suit prior to the class certification decision in *Snyder*.

---

[2]  Further, "[t]he Supreme Court has held that § 1658 applies to claims 'arising under' amendments to pre-existing statutes."  *Schumacher*, 711 F.3d at 682 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380–81 (2004)).

[3]  The *Snyder* plaintiffs do not allege claims—as Knight does here—under Michigan law.  *See Snyder*, 2017 WL 2798387, at *1.

In *American Pipe & Construction Co. v. Utah*, the United States Supreme Court established the doctrine for class action tolling. 414 U.S. 538, 554 (1974). There, the Court concluded that with respect to federal class actions "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* "Tolling continues until a court decides that the suit is not appropriate for class action treatment." *Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 643 (6th Cir. 2015) (citing *American Pipe*, 414 U.S. at 550, 553–54). Once a court issues a ruling regarding class certification, the putative class members may either (1) "protect their rights by moving to intervene as plaintiffs in the pending action," or (2) "file their own lawsuits." *Id.* (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983)).

As the Defendant correctly notes, *Wyser-Pratte Mgmt. Co. v. Texlon Corp.*, 413 F.3d 553 (6th Cir. 2005) is controlling. There, the Sixth Circuit agreed with a defendant that the plaintiff "'forfeited' the benefit of class action tolling by filing suit before decision on the motion for class certification." *Id.* at 568–69. The *Wyser-Pratte* court imposed forfeiture on the plaintiff for two principal reasons.[4]

---

[4] *Wyser-Pratte* is controlling authority in the Sixth Circuit, although it is the minority rule among circuits and the Second Circuit overturned the district court case holding which the *Wyser-Pratte* court found persuasive. *See In re WorldCom Sec. Litig.*, 496 F.3d 245, 254–56 (2d Cir. 2007) (concluding that *American Pipe* tolling applies to plaintiffs who file independent suits while class certification is pending). The

First, the Sixth Circuit explained that forfeiture is partly based on *Crown*, where the Supreme Court concluded "'that [o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* (alteration in original) (quoting *Crown*, 462 U.S. at 354, 103 S. Ct. 2392).

Second, "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided." *Id.* at 569.

Accordingly, in the Sixth Circuit, plaintiffs' claims are not tolled where plaintiffs file independent law suits during the pendency of a class certification decision.

Despite this authority, Knight argues his claims are subject to tolling and cites in support *Compressor Eng'g Corp. v. Chicken Shack, Inc.*, No. 10–cv–10059, 2013 WL 4413752 (E.D. Mich. Aug. 15, 2013). This case is inapposite.

In *Chicken Shack, Inc.*, unlike here, the plaintiff did not file an independent suit before a decision on class certification. Indeed, by the time the plaintiff filed

---

Sixth Circuit confirmed the vitality of *Wyser-Pratte* in *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789–90 (6th Cir. 2016).

the complaint in *Chicken Shack, Inc.*, the putative class action had been voluntarily dismissed without a decision regarding class certification. *Id.* at *2. In the putative class action then, the class certification issue had already been resolved prior to the commencement of *Chicken Shack, Inc.* Conversely, Knight initiated this action while a decision on class certification was pending in *Snyder*. By filing this suit prior to the class action decision in *Snyder*, Knight forfeited his right to tolling under *American Pipe*.

Accordingly, the Court will dismiss Plaintiff's TCPA claims arising before May 10, 2013, as the statute of limitations on these claims has expired.

### 2. Revocation

Next, Knight contends that he revoked consent before and after 2013 in phone calls with the Defendant by saying that "[he] no longer wished to be contacted by telephone." Dkt. No. 12, p. 6 (Pg. ID 92). The Defendant responds that Knight has not properly pled revocation of consent because (1) his oral requests that Ocwen stop calling him do not constitute revocation; and (2) he has not pled specific facts regarding the who, what, and when of this revocation. Dkt. No. 16, p. 21 (Pg. ID 164). The Court concludes that Knight has plausibly alleged revocation of consent.

As a threshold matter, the Court must decide whether revocation of consent is permissible under the TCPA. The TCPA is silent on whether it authorizes revocation of consent. The Sixth Circuit has also not addressed whether prior express consent

11

under the TCPA is revocable, and if so, under what circumstances. *See Currier v.*
*PDL Recovery Group, LLC*, No. 14-12179, 2017 WL 712887, at *9 (E.D. Mich. Feb.
23, 2017). The Court will conclude that persuasive authority indicates revocation is
authorized by the TCPA and that Knight has plausibly alleged revocation.

*Currier*, decided by a court in this district, is instructive. *Id.* at *9–10. There,
the court found that revocation is permissible under the TCPA and that the plaintiff
raised a genuine dispute regarding revocation. *Id.* Specifically, the court concluded
reasonable jurors would all agree that a plaintiff revoked prior express consent where
the plaintiff "orally revoked consent in February 2014 while on the phone with a
[defendant's] agent." *Id.*

To find that a plaintiff could revoke consent and that there was no genuine
dispute regarding that issue, the *Currier* court primarily relied on two sources. First,
in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255–56 (11th Cir. 2014), the
Eleventh Circuit concluded that the TCPA permits revocation of consent, and that
the plaintiff twice telling the defendant to stop calling him raised a genuine dispute
regarding revocation of consent. The *Osorio* court reasoned revocation is
permissible under the TCPA because Congress's silence on revocation expressed an
intent to adopt "the common law concept of consent." *Id.* at 1255 (citations omitted).
The common law concept of consent includes oral revocation. *Id.* (citations
omitted). Thus, the *Osario* court reasoned, Congress provided for oral revocation of

consent.  *Id.* (citations omitted).  The Eleventh Circuit also observed that oral revocation of consent "is consistent with the 'government interest articulated in the legislative history of the Act [that] enabl[es] the recipient to contact the caller to stop future calls.'"  *Id.* (alterations in original) (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376–77 (4th Cir. 2013)).  Finally, the Eleventh Circuit found further support from FCC guidance stating that "'requests to stop receiving voice calls . . . can be confirmed during the same call in which a consumer has expressed a desire to opt out.'"  *Id.* at 1256 (quoting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15398 (2012)).

Second, the *Currier* court relied on as persuasive authority 30 FCC Rcd. 7961 (July 10, 2015).  This FCC guidance makes explicit what may be inferred from the 2012 FCC guidance, i.e. "[c]onsumers may revoke consent at any time and through any reasonable means." *Id.*

As the Court finds that the TCPA provides for revocation, it also concludes that Knight has adequately alleged revocation of consent.  Knight asserts that he orally revoked consent on numerous occasions as late as 2013.  Although Knight has not provided specific dates and times on which he allegedly revoked consent, he had ample opportunity to tell the Defendant to stop calling him, as the plaintiff did in *Osorio*.  Indeed, the Defendant allegedly called him over one thousand times, over a span of several years.  His factual allegations then meet the *Twombly* threshold as

they are plausible and sufficiently specific. Accordingly, the Court finds that Knight has properly pled revocation of consent. His claims relating to conduct after May 10, 2013 then, should survive the Defendant's motion to dismiss.

a)      Knowing and Willful Violation

Knight contends, and the Court agrees, that he has plausibly alleged that Ocwen's violation of the TCPA was knowing and willful. Dkt. No. 12, p. 6 (Pg. ID 92). Specifically, he alleges that "[d]espite clear and unmistakable requests" for the Defendant to stop calling, "the calls continued without interruption." *Id.*

47 U.S.C.A. § 227(a)(3) establishes that where "[a] defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." Willfulness requires allegations "that [d]efendants knew that they acted in a manner that violated the statute (regardless if [d]efendants actually knew that they were violating the statute)." *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012). For example, allegations that "[d]efendants knew that [p]laintiff did not consent to the phone calls." *Id.*

Knight has plausibly alleged that Ocwen continued to call him after he revoked consent. Accordingly, Knight has adequately pled that any call occurring after his revocation of consent was done knowingly and willfully.

B.    Count II:  Common Law Negligence

Knight's next claim is for common law negligence.  Ocwen argues Knight fails to adequately allege a prima facie negligence claim because he has not properly pled that Ocwen owed him a duty, suffered actual damages, or both.  Dkt. No. 16, p. 21, 23 (Pg. ID 164, 166).  The Court finds that the Defendant did not owe Plaintiff a duty and, thus, it need not address whether the Plaintiff adequately alleges actual damages.

A plaintiff asserting a negligence claim under Michigan law must adequately allege "(1) that a duty existed; (2) that the duty was breached; (3) causation between the breach and the injury; and (4) damages."  *Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 727 F.3d 633, 638 (6th Cir. 2013).  "[W]hether a duty exists is a question of law."  *Id.*  "Under well-settled Michigan law, where the relationship between the parties is governed by a contract, there can be no tort liability unless the plaintiff alleges and proves the 'violation of a legal duty separate and distinct from' the obligations owed by the defendant under the contract."  *Ryan v. Ocwen Loan Servicing, LLC*, No. 15-11555, 2016 WL 1242433, at *3 (E.D. Mich. Mar. 30, 2016) (quoting *Rinaldo's Constr. Corp. v. Mich. Bell Telephone Co.*, 454 Mich. 65, 559 N.W.2d 647, 658 (1997)) (citing *Fultz v. Union-Commerce Assoc's*, 470 Mich. 460, 683 N.W.2d 587, 592 (2004)).

The Defendant cites several cases that, although not directly on point, lend support for the proposition that a mortgage loan servicer owes no duty to a borrower of a residential mortgage loan here. For example, Ocwen cites to *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 299 (6th Cir. 2015), where the plaintiff alleged that the defendant breached a duty owed to her under the federal Home Affordable Modification Program ("HAMP"). The court reasoned that although evidence of non-compliance with HAMP might support an inference of negligence, the plaintiff needed to first show that HAMP imposed a duty on the defendant. *Id.* at 299. As the plaintiff failed to make this showing, the court concluded that the defendant did not owe her a duty. *Id.*; *see also Rush v. Mac*, 792 F.3d 600, 605–66 (6th Cir. 2015) (concluding that "Plaintiffs' negligence claim, based on an alleged violation of HAMP, fails because they cannot establish that Freddie Mac breached a duty owed to them. Plaintiffs have not cited any Michigan case holding that HAMP imposes a legal duty on a lender sufficient to support a claim for common-law negligence.")

Knight does not allege that the TCPA imposes on Ocwen a duty of care. Moreover, in alleging that Ocwen owes him a duty, Knight fails to cite to any controlling authority, let alone cases in this circuit. For instance, Knight cites to *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009), which is not controlling and distinguishable in any event. There, applying California law, the court addressed the intentional tort of intrusion upon seclusion. *Id.* It held that

reasonable minds may disagree about whether the defendant committed this tort, as the defendant called the plaintiff numerous times regarding debt collection. *Id.* As an initial matter, the *Fausto* court observed that courts applying California law have held that "'repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion.'" *Id.* (quoting *Panahiasl v. Gurney*, No. 04–04479 JF, 2007 WL 738642, at *3 (N.D. Cal. Mar. 8, 2007)).

This case is inapposite because, among other things, Knight asserts a negligence claim, not an intentional tort, and Michigan law governs his claim, not California law. Knight has also failed to identify a statute that imposes a duty of care on Ocwen here. Accordingly, the Court concludes that Plaintiff's negligence claim does not survive Defendant's motion to dismiss.

C.     Count III:  Michigan Occupational Code

Knight alleges that Ocwen employed a "harassing, oppressive, or abusive method" in its debt collection practices in violation of MCL § 339.915(n). Dkt. No. 12, p. 8 (Pg. ID 94). Ocwen responds that it is not subject to regulation under the Michigan Occupational Code. Dkt. No. 16, p. 23 (Pg. ID 166). The Court agrees that the Michigan Occupational Code does not apply to Ocwen.

Michigan Compiled Laws Section 339.915(n) prohibits a licensed collection agency from:

> "[u]sing a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone

conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor. All communications shall be made from 8 a.m. to 9 p.m. unless the debtor expressly agrees in writing to communications at another time. All telephone communications made from 9 p.m. to 8 a.m. shall be presumed to be made at an inconvenient time in the absence of facts to the contrary."

The Michigan Occupational Code does not apply to "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency." MICH. COMP. LAWS § 339.901(b). Indeed, the definitional statute of the Michigan Occupational Code explicitly provides that this Code is inapplicable to "[a] business that is licensed by this state under a regulatory act that regulates collection activity." *Id.* at § 339.901(b)(vii).

The Michigan Occupational Code does not apply to Ocwen. As the Court may take judicial notice of certain facts, it takes judicial notice of Ocwen's license as a mortgage servicer. *See* Dkt. No. 16-1; *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (noting that "a court ruling on a motion to dismiss 'may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.'" (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003))). Ocwen's license as a mortgage servicer establishes that it is not subject to the Michigan Occupational Code. Consequently, Plaintiff's allegations regarding the Code do not survive Ocwen's motion to dismiss.

18

D.     Leave to Amend

Perhaps realizing that the Michigan Occupational Code does not apply to Ocwen, Knight has requested leave to amend his Complaint to add allegations related to the Michigan Collection Practices Act.  Dkt. No. 22, p. 29 (Pg. ID 241).  Specifically, he asserts that even if Ocwen is not a "regulated person" under the Michigan Occupational Code, it is still a business regarding debt collection licensed in Michigan, and thus, is subject to the Michigan Collection Practices Act.  Dkt. No. 22, p. 29 (Pg. ID 215).

The Court will grant Plaintiff leave to amend his Complaint only with respect to this claim.  *See* Fed. R. Civ. P. 15(a)(2).

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires."  A court may deny leave "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of allowance of the amendment, futility of amendment, etc.'" *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (emphasis in original) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).  In particular, "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Id.* (quoting *Riverview Health*, 601 F.3d at 520).

According to Ocwen, Knight has not plausibly alleged that it violated the Michigan Collection Practices Act, or that Ocwen was engaged in debt collection activities when it called him. Dkt. No. 23, p. 8–9 (Pg. ID 225–26). The Court finds this argument unavailing.

Knight alleges that Ocwen is subject to the Michigan Collection Practices Act and violated a particular subsection of the Act, MCL § 445.252(n). Dkt. No. 22, p. 29–30 (Pg. ID 240–41). Therefore, the Court grants Plaintiff leave to amend.

E.      Motion to Stay

Ocwen contends that the Court should grant a stay in this case pending the resolution of *ACA Int'l v. Fed. Commc'ns Comm'n*, Case No. 15-1211 (D.C. Cir.) ("*ACA International*"). Ocwen reasons a stay is appropriate because (1) "[i]t is entirely plausible (and indeed, probable) that the D.C. Circuit will overturn or at least narrow the FCC's definition of an 'autodialer[]'"; and (2) the *ACA International* decision would be dispositive in this action. Dkt. No. 9, p. 9 (Pg. ID 23). The Court finds Defendant's arguments unavailing.[5]

First, any decision in *ACA International* is not dispositive in this matter, as a decision by the D.C. Circuit is persuasive authority for this Court. Indeed, this Court

---

[5] Courts in this district are split as to whether a stay is appropriate in cases with similar allegations. *See, e.g.,* Order Denying Defendants' Motion to Stay, *Cataldi v. Ocwen Loan Servicing, LLC*, No. 17-cv-11487 (E.D. Mich. Aug. 15, 2017) (Hood, C.J.), Dkt. No. 21; *see also* Order Granting Motion to Stay, *Patterson v. Ally Fin., Inc.*, No. 16-cv-14505 (E.D. Mich. Apr. 5, 2017), Dkt. No. 15 (Borman, J.).

is only bound by decisions of the Sixth Circuit and United States Supreme Court. Second, Defendant offers mere speculation regarding the outcome and imminence of any ruling in *ACA International*.  The Court and the parties are unaware of the outcome and timing of a ruling in *ACA International*, and therefore, staying this case may prejudice the Plaintiff.  Third, judicial economy is not necessarily served by staying this case pending a decision in *ACA International*.  As *ACA International* is only persuasive authority, it is not evident that the Court will have wasted resources proceeding with this matter.

Therefore, the Court will deny Defendant's motion to stay this matter pending a ruling in *ACA International*.

## V.    Conclusion

For the reasons stated herein, the Court will **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss [16].  The Court grants in part and denies in part the motion to dismiss as to Count I, and the Court grants the motion to dismiss as to Counts II and III.

The Court will also **GRANT** Plaintiff's Motion for Leave to Amend the Complaint [22].  Plaintiff may file an amended Complaint no later than November 7, 2017.  Defendant must file an answer to the amended Complaint by November 15, 2017.

Finally, the Court will **DENY** Defendant's Motion to Stay [9].

SO ORDERED.

Dated:  October 31, 2017                    /s/Gershwin A. Drain
                                            GERSHWIN A. DRAIN
                                            United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 31, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk